**In re J.T. MORAN FINANCIAL CORP., J.T. Moran & Co., Inc., and Moore & Schley, Cameron & Co., Debtors.**

**J.T. MORAN FINANCIAL CORP., and J.T. Moran & Co., Inc., Plaintiffs,**

v.

**PHONETEL TECHNOLOGIES, INC., Defendant.**

**Bankruptcy Nos. 90B20078–86, 90B20078–87 and 90 ADV. 6074.**

United States Bankruptcy Court, S.D. New York.

Oct. 5, 1990.

**448**

Scheffler Karlinsky & Stern, New York City, for debtors.

Javitch & Eisen Co., L.P.A., Cleveland, Ohio (Harry W. Greenfield, of counsel), and Murray S. Lubitz, White Plains, N.Y., for Phonetel Technologies, Inc.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Chapter 11 debtor, J.T. Moran Financial Corp., and its affiliate corporation, J.T. Moran & Co., Inc., collectively referred to as ("the debtor") have moved for summary judgment on their adversary complaint against the defendant, Phonetel Technologies, Inc. ("Phonetel"), a corporation having its principal place of business in Cleveland, Ohio. The debtor seeks to recover against Phonetel on two causes of action. The first claim is for $24,000.00 under an advisory services agreement for consulting services furnished to Phonetel over a two year period at the agreed rate of $2,000.00 per month (the "advisory services agreement"). The second claim is to recover $600,000.00 by way of indemnification because the debtor pledged a certificate of deposit with Bank One, Cleveland (N.A.) ("Bank One") in connection with the obligations of Phonetel to Bank One, which Bank One drew upon pursuant to a successful application to lift the automatic stay in order to allow Bank One to enforce its rights against the pledged collateral. In addition to the $24,000.00 claim under the consulting contract, the debtor seeks to recover for expenses incurred under the contract in connection with the preparation of reports and arrangements for Phonetel's annual meetings in the sum of $6,866.53.

In its answer, Phonetel denies that the debtor performed all obligations incurred under the advisory services agreement. Additionally, Phonetel asserts a counterclaim for damages allegedly caused by the debtor's failure to fund Phonetel's cash needs as promised in writing, which allegedly resulted in Phonetel's inability to perform on its existing contracts.

As to the $600,000.00 indemnification claim arising out of the fact that Bank One liquidated the $600,000.00 certificate of deposit pledged by the debtor to secure Phonetel's obligations to Bank One, Phonetel argues that the debtor was not a guarantor of any loan obligation on its part to Bank One because there are no agreements between the parties that would evidence that the debtor is a guarantor or entitled to indemnification from Phonetel. It is argued by Phonetel in opposition to the debtor's summary judgment motion that the debtor, as an underwriter of Phonetel's publicly held stock, purchased additional shares of Phonetel's stock from certain officers and directors of Phonetel and agreed to relieve those shareholders of their personal guarantees to Bank One by putting up a certificate of deposit with Bank One as part of the transaction and in substitution for the shareholders' guarantees to Bank One. Phonetel argues that the understanding between the parties was that Phonetel would eventually obtain new financing to pay off its current loan from Bank One, at which time the $600,000.00 certificate of deposit pledged by the debtor with Bank One would be released.

## UNDISPUTED FACTS

1. On January 29, 1990 the plaintiffs, J.T. Moran Financial Corp. and its affiliate Corporation, J.T. Moran & Co., Inc. filed with this court petitions for relief under Chapter 11 of the Bankruptcy Code and continued to operate their businesses as

debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. On February 8, 1988, the debtor, J.T. Moran & Co., Inc., entered into an advisory services agreement with the defendant, Phonetel. The agreement recites that the debtor acted as an underwriter for Phonetel's stock and agreed to furnish Phonetel advice and recommendations with respect to aspects of Phonetel's business, including acquisition opportunities, assisting in shareholder relations and the preparation of annual reports and other releases, assisting in long term financial planning and other consulting activities. As compensation, Phonetel agreed to pay the debtor for such services a fee of $2,000.00 per month for two years.

3. By letter dated September 26, 1989, the debtor agreed to provide assistance to Phonetel in attempting to locate financing over the next twelve-month period and to fund any cash shortfall until the tendering of Phonetel warrants owned by the debtor were fully funded.

4. Pursuant to a stock purchase agreement dated as of January 31, 1989, the debtor, J.T. Moran Financial Corp., agreed to purchase Phonetel stock held by certain directors and officers of Phonetel in order to relieve these directors and officers from guarantees which they previously issued to certain banks, including Bank One, and to secure the banks for bank loans made to Phonetel, which were also secured by Phonetel assets. The transaction was stated as entered into "to assist Phonetel in restructuring its debt and obtaining additional sources of capital." Pursuant to the transaction, the debtor was to substitute its promise to the Banks for those of the selling shareholders, who were not paid anything for their shares. As consideration for this purchase, the debtor agreed to indemnify the selling shareholders in order to secure their guarantees of Phonetel's obligations to the named banks. In other words, the banks could look to the debtor as the surety for the guarantees of the selling shareholders with respect to Phonetel's obligations to the banks.

5. In accordance with the debtor's purchase of stock from some of the officers and directors of Phonetel and substituting its guaranty of the loans from Bank One to Phonetel, the debtor deposited with Bank One a certificate of deposit in the face amount of $500,000.00 as collateral for loans made by Bank One to Phonetel. The debtor also delivered to Bank One a guaranty dated February 27, 1989, collateralized by a $500,000.00 certificate of deposit and a collateral assignment. The guaranty was a continuing guaranty, which stated that "in consideration of existing loans and/or loans to be made hereafter by Bank One, Cleveland, N.A. (hereinafter Bank One), to Phonetel Technologies, Inc.... and to induce Bank One *to continue* and/or make such loans or any extensions *or renewals* thereof", the debtor assigned a certificate of deposit to Bank One in the amount of $500,000.00. (Emphasis added).

6. On August 11, 1987, the debtor delivered another certificate of deposit to Bank One in the amount of $80,000.00 pursuant to substantially similar papers, including its guaranty of payment.

7. On August 31, 1989, the debtor executed another continuing guaranty to Bank One and delivered a certificate of deposit to Bank One in the amount of $20,000.00.

8. In October of 1989, the debtor consolidated its total obligation of $600,000.00 to Bank One and executed and delivered to Bank One its promissory note in the amount of $600,000.00. No additional certificates of deposit or specific expressions of guaranty were then issued by the debtor to Bank One, because Bank One already had in its possession the debtor's certificates of deposit totalling $600,000.00 and the debtor's continuing guarantees of payment. The $600,000.00 promissory note stated that it was due on demand beginning October 15, 1989.

9. In an application for relief from the automatic stay, dated June 27, 1990, Bank One referred to the three assignments of certificates of deposit made to it by the debtor, totalling $600,000.00 in consideration of existing loans and/or loans to be made by Bank One to Phonetel. The application for stay relief also recited that the

three notes were renewed and replaced by a promissory note in the principal amount of $600,000.00, and secured by the debtor's certificate of deposit in the amount of $603,890.03. The application for stay relief filed by Bank One stated that Phonetel failed to comply with the terms of its obligation to Bank One, notwithstanding Bank One's written demand for payment, dated March 5, 1990, and notice that it would liquidate the certificate of deposit pledged by the debtor.

10. Thereafter, Bank One was granted relief from the stay by order of this court dated August 10, 1990, whereupon Bank One liquidated the certificate of deposit pledged by the debtor to secure Phonetel's obligations to Bank One.

11. Phonetel has acknowledged its obligation to the Bank in its annual report to shareholders for the year ended December 31, 1989. On page 11 of the Annual Report, Phonetel stated as follows:

> The Company is indebted to a bank in the amount of $600,000, secured by certificates of deposit totalling $600,000 provided by J.T. Moran Financial Corporation ("JTMFC") in connection with JTMFC's purchase of certain shares of Common Stock from certain founding shareholders of the Company in 1989. Payment in full of the note was due on March 15, 1990. It is expected that the first course of action to be taken by the bank would be to liquidate the certificate of deposit pledged by JTMFC. As JTMFC is currently in Chapter 11 reorganization, it is expected that JTMFC would demand immediate repayment from the company.

12. In its answer Phonetel alleges that the parties agreed that the $600,000.00 indemnification debt owed by Phonetel to the debtor as a result of the debtor's guaranty of Phonetel's debt to Bank One and the liquidation of the $600,000.00 certificate of indebtedness does not become due to the debtor until Phonetel refinances its obligation, which it has not done.

## DISCUSSION

### Summary Judgment

In ruling on a motion for summary judgment, the court must review the pleadings, admissions and affidavits, to determine if there is no genuine dispute as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses ...". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362–63, 89 L.Ed.2d 538 (1986).

### Jurisdiction

■ In the instant case, this court may not enter a summary judgment for the basic jurisdictional reason that a bankruptcy court may not enter any final order or judgment in a proceeding that is not a core proceeding, but is otherwise related to a case under title 11. In such a proceeding 28 U.S.C. § 157(c)(1) prescribes that the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court. The debtor's two causes of action for breach of the advisory services contract and for indemnification for the liquidation of its certificates of deposit which the debtor pledged to Bank One as a guaranty of the obligations of Phonetel do not constitute core proceedings within the meaning of 28 U.S.C. § 157(b)(2). Core proceedings are "proceedings arising under title 11, or arising in a case under title 11 ...". 28 U.S.C. § 157(b)(1). A proceeding arising under title 11, or arising in a case under title 11 is one which would have no existence outside of the bankruptcy case. *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). The proceeding must invoke a substantive right provided by title 11. *Kolinsky v. Russ, (In*

*re Kolinsky* ), 100 B.R. 695, 701 (Bankr.S. D.N.Y.1989). While the debtor's complaint does not involve core matters, it does implicate the jurisdictional authority of the bankruptcy court to hear related proceedings for the purpose of submitting proposed findings of fact and conclusions of law to the district court for the entry of a final order or judgment, in accordance with 28 U.S.C. § 157(c)(1).

The debtor's state-law causes for indemnification and for breach of contract are not core matters because they do not invoke substantive rights provided by title 11 and are not central to the bankruptcy court's function in administering the estate of the debtor. A resolution of the debtor's state-law causes of action would affect the amount of property available for distribution to the creditors and should be classified as "otherwise" related to a case under title 11 within the meaning of 28 U.S.C. § 157(c)(1). *In re Ira Altchek,* 119 B.R. 31 (Bankr.S.D.N.Y.1990). The test for determining whether a civil proceeding is related to a bankruptcy case is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984); *(In re Kolinsky),* 100 B.R. at 702.

*Additional Bars to Summary Judgment*

■ There are genuine disputes as to material facts regarding the debtor's first cause of action for breach of the advisory services agreement. The defendant, Phonetel, denies that the debtor performed as required under this agreement and counterclaims for damages allegedly caused by the debtor's failure to obtain short-fall financing for Phonetel's cash needs as promised. This factual dispute cannot be resolved on a motion for summary judgment.

The debtor's second cause of action for indemnification for the $600,000.00 certificate of deposit which was pledged to Bank One and thereafter liquidated in satisfaction of the debtor's guaranty of Phonetel's obligations to Bank One is also not ripe for summary judgment, but not for the reason asserted by the defendant, Phonetel.

■ Phonetel argues in opposition to the debtor's motion for summary judgment that while the debtor previously guaranteed Phonetel's obligations to Bank One when the debtor pledged the separate certificates of indebtedness for $500,000.00, $80,000.00 and $20,000.00 respectively, the debtor did not expressly issue a guaranty when it thereafter pledged the consolidated $600,000.00 certificate of indebtedness. This argument lacks merit for the reason that each of the three guarantees which the debtor executed with respect to its pledge of each of the three previous certificates of indebtedness states that the guaranty shall continue as to renewals and future extensions of credit to Bank One for any and all "money now, or at anytime hereafter" and until the guaranty is terminated. Thus, each guaranty by its terms continued for future credit extended by Bank One to Phonetel. *See Chemical Bank v. Wasserman,* 357 N.Y.S.2d 13, 45 A.D.2d 703 (1st Dept. 1974), *aff'd* 37 N.Y.2d 249, 371 N.Y.S.2d 919, 333 N.E.2d 187 (1975). In order to recover upon the terms of a continuing guaranty, a plaintiff must demonstrate the existence of three elements: (1) A writing which contemplates the future extensions of credit; (2) A separate and independent writing which reflects the underlying financial debt; and (3) Consideration to the guarantor. *See County National Bank v. Grunwald,* 30 A.D.2d 663, 291 N.Y.S.2d 823 (2nd Dept.1968); *Columbia Hospital v. Hraska,* 338 N.Y.S.2d 527, 72 Misc.2d 112 (N.Y.City Civ.Ct.1972); *Central Trust Co., Rochester, N.Y. v. J. Gottermeir Dev. Co.,* 319 N.Y.S.2d 25, 65 Misc.2d 676 (N.Y.Sup.1971). *See also* N.Y. General Obligations Law, Section 5–701(a)(2).

■ Generally, a surety is equitably entitled to full indemnity against the consequences of a principal obligor's default. *Pro–Specialties, Inc. v. Thomas Funding Corp.,* 812 F.2d 797, 799 (2d Cir.1987); *Leghorn v. Ross,* 53 A.D.2d 560, 384 N.Y.S.2d 830 (1st Dept.1976), *aff'd on other grounds* 42 N.Y.2d 1043, 399 N.Y.S.2d 206, 369 N.E.2d 763 (1977). Even though not expressly provided for in the guaranty, a

promise to indemnify the surety is implied by law when a party agrees to become a guarantor at the behest of the principal obligor. *Pro–Specialties, Inc. v. Thomas Funding Corp.,* 812 F.2d at 800; *Konitzky v. Meyer,* 49 N.Y. 571, 576 (1872). However, the indemnification is not implied if the parties provided otherwise. *Leghorn v. Ross,* 53 A.D.2d at 560, 384 N.Y.S.2d at 830.

In the instant case, the defendant, Phonetel, argues that the debtor did not agree to become a guarantor at Phonetel's behest and that the debtor entered into a separate agreement with certain officers and directors who were stockholders of Phonetel, whereby the debtor agreed to substitute its guaranty and pledged certificates of indebtedness as collateral in substitution for the shareholders' guarantees of Phonetel's debts in consideration for the shareholders' transfer of their Phonetel stock to the debtor. Thus, Phonetel argues that there may have been a novation as to the substitution of the debtor's guaranty to Bank One in exchange for the release of the shareholders' guarantees in connection with the debtor's acquisition of Phonetel stock for the debtor's portfolio. Thus, Phonetel maintains that it did not request the debtor to guaranty Phonetel's obligations to Bank One and that it did not receive any separate consideration with respect to the transaction which the debtor entered into with the shareholders of Phonetel. Accordingly, Phonetel reasons that it should not be bound by any implied indemnification obligation arising out of the debtor's separate transaction with the Phonetel shareholders. This defense raises genuine questions of fact as to whether Phonetel directly, or indirectly, caused the debtor to guaranty Phonetel's obligations to Bank One; whether Phonetel received any consideration or benefit as a result of the debtor's guaranty and pledge of certificates of deposit; and whether there was any agreement between the parties that Phonetel would not be required to indemnify the debtor in the event that Bank One liquidated the pledged certificate of indemnification. If the facts establish that the Phonetel shareholders were the ones who re-quested the guaranty and pledge of collateral by the debtor, without any involvement on the part of Phonetel, it would follow that the debtor would have to look to the shareholders for indemnification for the loss of its collateral, and not Phonetel. These disputed facts prevent the entry of summary judgment in favor of the debtor.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a related proceeding in accordance with 28 U.S.C. § 157(c)(1).

2. This court may not enter a final order for summary judgment because the plaintiff debtor's two causes of action do not constitute core proceedings within the meaning of 28 U.S.C. § 157(b)(2).

3. Even if this litigation was a core proceeding, the plaintiff debtor would not be entitled to summary judgment because there are genuine issues of material facts which are disputed.

4. The plaintiff debtor's motion for summary judgment is denied.

SETTLE ORDER on notice.